UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ROBERT SILER, #374576, | No. 2:08-cv-15077 |
| Plaintiff, | Honorable Patrick J. Duggan |
| v. | Magistrate Judge Mona K. Majzoub |
| W. BALDWIN, et al., | |
| Defendants. | |
| Tricia L. Roelofs (P72383) | Clifton B. Schneider (P70582) |
| Heidi A. Naasko (PP58783) | Assistant Attorney General |
| David J. Council (P73163) | *Attorney for Defendants* |
| Robert Franzinger (P25539) | Corrections Division |
| Joseph A. Doerr (P66109) | P.O. Box 30217 |
| *Attorneys for Plaintiff* | Lansing, MI 48909 |
| Dykema Gossett PLLC | (517) 335-7021 |
| 400 Renaissance Center | SchneiderC1@michigan.gov |
| Detroit, MI 48243 | |
| (313) 568-6530 | |
| troelofs@dykema.com | |
| hnaasko@dykema.com | |
| dcouncil@dykema.com | |
| rfranzinger@dykema.com | |
| jdoerr@dykema.com | |

**DEFENDANT BALDWIN'S MOTION TO DISQUALIFY PLAINTIFF'S PURPORTED EXPERT WITNESS, BRYAN JUDGE, M.D., OR TO CONDUCT A DAUBERT HEARING TO DETERMINE THE ADMISSIBILITY OF HIS TESTIMONY UNDER FED. R. EVID. 702**

Defendant Baldwin, by counsel, hereby moves to have the Court preclude the plaintiff's purported expert, Bryan Judge, from testifying at trial in this matter or, in the alternative, to conduct a *Daubert* hearing to determine the admissibility of the testimony under Federal Rules of Evidence 702. This motion is based on Rule 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.* and its progeny, and the other

1

reasons set forth in the accompanying brief. Concurrence in this motion was sought from the plaintiff's counsel, but concurrence was denied.

                                  Respectfully submitted,

                                  Bill Schuette
                                  Attorney General

                                  Clifton Schneider
                                  Assistant Attorney General
                                  Attorney for Defendants
                                  Corrections Division
                                  P.O. Box 30217
                                  (517) 335-7021
                                  SchneiderC1@michigan.gov
Dated:  August 10, 2012               P70582

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ROBERT SILER, #374576,

        Plaintiff,

v.

W. BALDWIN, et al.,

        Defendants.

No. 2:08-cv-15077

Honorable Patrick J. Duggan

Magistrate Judge Mona K. Majzoub

| | |
|---|---|
| Tricia L. Roelofs (P72383) | Clifton B. Schneider (P70582) |
| Heidi A. Naasko (PP58783) | Assistant Attorney General |
| David J. Council (P73163) | *Attorney for Defendants* |
| Robert Franzinger (P25539) | Corrections Division |
| Joseph A. Doerr (P66109) | P.O. Box 30217 |
| *Attorneys for Plaintiff* | Lansing, MI  48909 |
| Dykema Gossett PLLC | (517) 335-7021 |
| 400 Renaissance Center | SchneiderC1@michigan.gov |
| Detroit, MI 48243 | |
| (313) 568-6530 | |
| troelofs@dykema.com | |
| hnaasko@dykema.com | |
| dcouncil@dykema.com | |
| rfranzinger@dykema.com | |
| jdoerr@dykema.com | |

**DEFENDANT BALDWIN'S BRIEF IN SUPPORT OF MOTION TO DISQUALIFY PLAINTIFF'S PURPORTED EXPERT WITNESS, BRYAN JUDGE, M.D., OR TO CONDUCT A DAUBERT HEARING TO DETERMINE THE ADMISSIBILITY OF HIS TESTIMONY UNDER FED. R. EVID. 702**

        Bill Schuette
        Attorney General

        Clifton Schneider
        Assistant Attorney General
        Attorney for Defendants
        Corrections Division
        P.O. Box 30217
        (517) 335-7021
        SchneiderC1@michigan.gov

Dated:  August 10, 2012        P70582

## CONCISE STATEMENT OF ISSUES PRESENTED

1. Federal caselaw requires that expert opinions be reliable. With regard to the claim remaining in this case, Dr. Judge concludes that an alleged fall from a bunk "could have" or "may have" worsened a pre-existing condition of the plaintiff's. Should Dr. Judge's opinions be excluded as unreliable because they are not made with any degree of medical certainty?

2. Relevance is required for an expert opinion to be admissible. Relevance is defined by helpfulness to the jury. Here, Dr. Judge concludes that if the plaintiff fell from his bunk, hit his head, and lost consciousness, he should have been evaluated by medical staff. He also concludes that the plaintiff "may have" been injured in the alleged fall. Should Dr. Judge's opinion be excluded as not relevant because it does not go beyond the ken of common knowledge and common sense?

## STATEMENT OF FACTS

This is a prisoner civil-rights action. The sole remaining claim is that Defendant Baldwin was allegedly deliberately indifferent to the plaintiff's medical needs on July 28, 2008, when the plaintiff allegedly fell from his bunk and hit his head. Regarding this claim, the Court has held as follows, "If Baldwin knew that Plaintiff was suffering from a serious medical need and that he was waiting near her office for a response from health services but nonetheless informed health services that he was off on the basketball courts to interfere with what would otherwise have been an immediate response by health services, those facts would indicate deliberate indifference." [D/E #90, page 7].

The plaintiff has submitted an expert report completed by Bryan Judge, M.D. [Attached as Exhibit A]. Notably, Dr. Judge's resume indicates that he has no experience in any prison or jail setting. [Curriculum Vitae, attached as Exhibit B]. Dr. Judge's report concludes that the plaintiff suffered a cervical radiculopathy in October 2007. [Exhibit A, page 2]. Dr. Judge criticizes the care provided for that condition and indicates that an MRI was performed 16 months after the injury occurred rather than after 4-6 weeks, which he states is the standard of care in a community setting (Dr. Judge does not and is not qualified to testify regarding the standard of care in a prison setting). [Exhibit A, page 3]. He also criticizes the pain medications prescribed as insufficient. [Exhibit A, page 3].

With regard to the actual claim in this case, Dr. Judge assumes that the plaintiff fell from his bunk, struck his head and neck, and lost consciousness. [Exhibit A, page 3, ¶ 10]. Dr. Judge "takes issue" with the alleged denial of a

1

medical evaluation after the alleged fall from the bunk.  [Exhibit A, page 4].  Dr. Judge opines that the fall "could have certainly worsened [the plaintiff's] radiculopathy and resulted in a serious closed head injury that is not always apparent to a person without medical training." [Exhibit A, page 4].  He opines that a "prompt medical evaluation should have been performed." [Exhibit A, page 4].  Finally, Dr. Judge concludes, "this fall may have worsened his radiculopathy and a prompt medical evaluation should have been performed to rule out a serious neck or back injury." [Exhibit A, page 4].

## ARGUMENT

In this case, expert reports were due on April 18, 2012.  [D/E #156].  Pursuant to Federal Rules of Civil Procedure 26(a)(2)(B)(i), Dr. Judge's report was required to include a complete statement of all opinions he would express and the basis and reasons for them.  He was also required to disclose the facts and data considered in forming his opinions.  Fed. R. Civ. P. 26(a)(2)(B)(ii).  Based on Dr. Judge's expert report, Dr. Judge's opinions are neither reliable nor relevant.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.* and *Kumho Tire Co., Ltd. v. Carmichael*, the United States Supreme Court firmly established the district court's role as gatekeeper of expert testimony.  *Daubert*, 509 U.S. 579, 589 (1993); *Kumho Tire*, 526 U.S. 137, 141 (1999).  The Rules of Evidence, according to the Court, "assign the trial judge the task of insuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597.

Federal Rule of Evidence 702 codifies this standard, setting out several hurdles for a party seeking to admit expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Under this rule, the expert's proffered testimony must "help the trier of fact to understand the evidence or to determine a fact in issue." *Id.*  In addition, the testimony must be triply reliable: it must be based on (1) reliable principles and methods that are (2) reliably applied to (3) reliable facts and data. *Id.*

The district court has broad discretion in admitting or rejecting expert testimony.  *Morales v. American Honda Motor Co.*, 151 F.3d 500, 514 (6th Cir. 1998).  Its decisions, however, "must be made upon the evidence of the witness's qualifications, or lack thereof, and not upon the trial court's personal views." *Kingsley Associates, Inc. v. Del-Met, Inc.*, 918 F.2d 1277, 1286 (6th Cir. 1990) (citations omitted).  The party offering expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence.  *Nelson v. Tenn.*

3

*Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001) (citing Daubert, 509 U.S. at 592, n. 10).

In order to satisfy that burden, the proffered expert testimony must meet the demands of Federal Rules of Evidence 702. *Daubert*, 509 U.S. 579. An "expert's bald assurance of validity is not enough." *Smelser v. Norfolk Southern Railway Co.*, 105 F.3d 299, 303 (6th Cir. 1997). Nevertheless, Rule 702's requirements are applied liberally, leaving "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof [as] the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596; *see also Pride v. Bic Corp.*, 218 F.3d 566, 577 (6th Cir. 2000).

Expert testimony may only be admitted into evidence if (1) the methodology by which the expert reaches his or her conclusions is sufficiently reliable ("Reliability Test"); (2) the expert's testimony will assist the trier of fact to understand the evidence or determine a fact in issue ("Relevancy Test"); and (3) the witness qualifies as an expert ("Qualifications Test"). *Daubert*, 509 U.S. at 589-91.

The first inquiry is whether the testimony of the proposed expert is reliable and trustworthy. *In re Northwest Airlines Corp.*, 197 F. Supp. 2d 908, 913 (E.D. Mich. Mar. 29, 2002) (Rosen, J.). "Rule 702 restates Daubert's insistence on the requirements that an expert's opinion be based on a foundation grounded in the actual facts of the case, that the opinion is valid according to the discipline that furnished the base of special knowledge, and that the expert appropriately 'fits' the facts of the case into the theories and methods he or she espouses." *Bd. Of Trs.,*

4

*Sheet Metal Workers' Nat'l Pension Fund v. Palladium Equity Partners, LLC*, 722 F. Supp. 2d 845, 852 (E.D. Mich. 2010) (Lawson, J.) (citing *Daubert*, 509 U.S. at 591-93). This inquiry has both quantitative and qualitative components. *In re Northwest Airlines Corp.*, 197 F. Supp. 2d at 913.

Quantitatively, the plaintiff must demonstrate that the expert testimony is "based upon sufficient facts or data." *Id.* at 914. The Sixth Circuit has explained this test as follows:

> An expert's opinions must be supported by 'more than subjective belief and unsupported speculation' and should be supported by 'good grounds,' based on what is known. The expert's conclusions regarding causation must have a basis in established fact and cannot be premised on mere suppositions. An expert's opinions, where based on assumed facts, must find some support for those assumptions in the record.

*McLean v. 988011, Ltd.*, 224 F.3d 797, 800-01 (6th Cir. 2000) (citations omitted).

Qualitatively, the plaintiff must demonstrate that the expert's opinions "rest upon a foundation of reliable principles and methods." *In re Northwest Airlines Corp.*, 197 F. Supp. 2d at 913. The factors that the Court may look to in making this assessment include "the testability of the expert's hypotheses (whether they can be or have been tested), whether the expert's methodology has been subjected to peer review, the rate of error associated with the methodology, and whether the methodology is generally accepted in the [relevant] community." *Berry v. Crown Equipment Corp.*, 108 F. Supp. 2d 743, 749 (E.D. Mich. Aug. 16, 2000) (Rosen, J.).

In addition to examining the reliability of expert testimony, *Daubert* also requires courts to consider the relevancy of such evidence. *Cook v. American S.S. Co.*, 53 F.3d 733, 737-38 (6th Cir. 1995). The relevancy inquiry seeks to determine

5

whether the proposed expert testimony will assist the trier of fact. *In re Northwest Airlines*, 197 F. Supp. 2d at 914 (quoting *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000)). "Such testimony is unhelpful when it is unreliable or irrelevant, as the Court observed in Daubert . . . and also when it merely deals with a proposition that is not beyond the ken of common knowledge." *Zuzula v. ABB Power T&D Co.*, 267 F. Supp. 2d 703, 711 (E.D. Mich. June 3, 2003) (Lawson, J.). Expert opinions must "account for" and cannot simply "ignore[] inconvenient evidence." *In re Northwest Airlines Corp.*, 197 F. Supp. 2d at 914 (quoting *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056-57 (8th Cir. 2000)). It is well established that an expert witness's testimony is not helpful "where the jury has no need for an opinion because it easily can be derived from common sense, common experience, the jury's own perceptions, or simple logic." Charles Alan Wright et al., 29 Federal Practice & Procedure Evidence § 6264.

## I. Dr. Judge's opinion is not reliable because his opinions are not stated with any degree of medical certainty whatsoever.

Dr. Judge's opinions lack any degree of reasonable probability. Dr. Judge opines that the alleged fall from the bunk "could have" or "may have" worsened the plaintiff's pre-existing condition. Dr. Judge uses terms such as "could" and "may" because he cannot say with any degree of authority whether the plaintiff's condition was in fact worsened. Dr. Judge also notes that the plaintiff allegedly fell from his bunk on July 28, and radiographs of his neck and left shoulder were performed on August 1, four days later. [Exhibit A, page 3, ¶ 10]. Dr. Judge does not even opine

6

on whether this 4-day delay in treatment actually caused any injury to the plaintiff. Dr. Judge's speculative opinions are the very type of opinions that Rule 702 was meant to exclude.

II. **Dr. Judge's opinion is not relevant because it will not be helpful to the jury in deciding any material fact at issue in this case.**

Dr. Judge does not employ any scientific principles or methodology to the facts in this case in forming his opinions. Rather, he merely accepts the plaintiff's version of events from the second amended complaint and makes plain observations that are not beyond the ken of common knowledge. The jury is free and able to make the same observations that Dr. Judge makes.

Dr. Judge opines that an inmate who falls from a bunk, strikes his head and neck, and loses consciousness should be evaluated by medical staff. Such conclusion is not beyond the ken of common knowledge – it can easily be derived from "common sense, common experience, the jury's own perceptions, or simple logic." This is even more evident by the fact that Dr. Judge is testifying as to what nursing staff or prison guards should have done – Dr. Judge is not a nurse, has no corrections experience, and is not qualified to testify as to the nursing standard of care, in or out of the prison setting.

The same is true of the statement that the plaintiff's pre-existing medical condition "could have" or "may have" worsened as a result of the fall. Nowhere does Dr. Judge opine that the plaintiff's condition <u>did</u> in fact get worse. Nowhere does Dr. Judge opine that any delay caused by Baldwin caused any injury to the plaintiff.

7

Although the facts surrounding the alleged fall from the bunk are hotly contested, if the jury concludes that the plaintiff did in fact fall, hit his head, and lose consciousness, they can reach the same conclusions as Dr. Judge: a person might get hurt falling, and they should be seen by healthcare. They would then have to decide whether Baldwin knew of the injury and prevented healthcare from evaluating the plaintiff. Dr. Judge's opinions are not relevant because they are not helpful.

Dr. Judge's opinions related to the care provided to the plaintiff relating to his October 2007 injury are also not relevant and not helpful. There is no claim in this case related to that care, and no person associated with that care is a party to this case.

## CONCLUSION AND RELIEF REQUESTED

Defendant Baldwin respectfully requests that the Court grant her motion and exclude the testimony of Dr. Judge.  Alternatively, the defendant requests that the Court hold a *Daubert* hearing, where the defendant would have the opportunity to *voir dire* Dr. Judge, and the Court could determine the admissibility of his opinions.

Respectfully submitted,

Bill Schuette
Attorney General

Clifton Schneider
Assistant Attorney General
Attorney for Defendants
Corrections Division
P.O. Box 30217
(517) 335-7021
SchneiderC1@michigan.gov
P70582

Dated:  August 10, 2012

CBSCases/2009-0010891-A/Mot & Brf to Disqualify Expert 8-10-12

**CERTIFICATE OF SERVICE**:  I certify that on August 10, 2012, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will provide electronic copies to counsel of record.

> ***/s/ Clifton Schneider (P70582)***
> Assistant Attorney General
> PO Box 30217
> Lansing, MI 48909
> (517) 335-7021
> schneiderc1@michigan.gov
> P70582